

**SO ORDERED.**

**SIGNED this 25 day of September, 2020.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 11-04017-8-SWH |
| JOHN JEROME PALCZUK and | CHAPTER 11 |
| KAREN ELIZABETH PALCZUK, | |
| | |
| DEBTORS | |

| | |
|---|---|
| JOHN JEROME PALCZUK and | ADVERSARY PROCEEDING |
| KAREN ELIZABETH PALCZUK, | NO. 19-00001-8-SWH |
| | |
| Plaintiffs, | |
| v. | |
| | |
| STEVE CONWAY, LORI CONWAY, LORCON, | |
| LLC#1, and LORCON, LLC #4, | |
| | |
| Defendants | |

### ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

The matters before the court in this adversary proceeding are the plaintiffs' motion for summary judgment on both of their causes of action, filed on February 13, 2020, and defendants' cross-motion for summary judgment, which was filed on March 5, 2020.  A hearing was held in

Raleigh, North Carolina, on April 16, 2020, after which the court took the matter under advisement. For the reasons that follow, plaintiffs' motion will allowed, and defendants' motion will be denied.

## PROCEDURAL HISTORY

On May 25, 2011, John and Karen Palczuk filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Bkcy. Dkt. 1.  The Palczuks listed defendants Steve and Lori Conway as "codebtors" on Schedule H of the petition and included them on the creditor matrix.  Per routine notices and scheduling protocols, the court set August 26, 2011 as the deadline for filing complaints to determine dischargeability, and September 26, 2011, as the proof of claim deadline.  The defendants did not file a dischargeability complaint, and did not file a proof of claim.[1]

Plaintiffs filed their chapter 11 plan and disclosure statement on September 22, 2011, both of which were conditionally approved the following day.  A hearing on confirmation was set for November 8, 2011, with the previous day (November 7, 2011) set as the deadline for filing objections to the disclosure statement and voting on the plan.  Defendants did not object, and did not vote.  The plan was confirmed on January 5, 2012, and provided for a discharge pursuant to 11 U.S.C. § 1141(d)(5)(A).  In addition, Article XV of the plan included the following provision:

> 15.1  Waiver against and Release of Debtors.  Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtors, which release is supported by the requirements of this Plan and covenants contained herein.

Bkcy. Dkt. 70 at 8.  Upon plaintiffs' completion of plan payments, a discharge was entered by order dated November 29, 2012.  The case was closed on January 30, 2013.

---

[1] This statement of procedural history and background facts is taken in large part from the court's Order Supplementing Interim Order Denying Motion to Dismiss, which was entered in this adversary proceeding on September 5, 2019.  Dkt. 22.

Subsequent to this, defendants engaged in state court litigation and in other actions against plaintiffs as discussed more specifically below. Plaintiffs moved to reopen their case on November 8, 2018, and the motion was allowed by order entered on February 5, 2019. Plaintiffs initiated this adversary proceeding against defendants on April 4, 2019, seeking to have the court declare that no nondischargeable debts exist and that the court sanction defendants for their post-confirmation and post-discharge conduct. On May 6, 2019, defendants filed a motion to dismiss the proceeding for lack of subject matter jurisdiction, or in the alternative to stay the proceeding. That motion was denied by an interim order entered on July 25, 2019, which later was supplemented, on September 5, 2019, by entry of an order setting out the court's reasoning in more detail. Dkt. Nos. 13, 22.

On August 23, 2019, the court entered an order directing the defendants to answer or otherwise respond to the complaint, which they did on October 30, 2019. Defendants subsequently filed a motion to stay the proceeding, to which the plaintiffs responded with a memorandum in opposition. A hearing was held on January 14, 2020, during which the motion to stay was denied and plaintiffs were directed to file their motion for summary judgment within 30 days. Plaintiffs' motion and accompanying memorandum were filed on February 13, 2020. Dkt. Nos. 47, 48. In response, on March 5, 2020, defendants filed an objection to the motion. Dkt. 53. Defendants filed their own motion for summary judgment that same day, and filed a supporting memorandum on March 9, 2020. Dkt. Nos. 54, 57. Plaintiffs responded to the defendants' motion on March 26, 2020. Dkt. 58. A hearing was held on April 16, 2020, after which the court took the motions under advisement, and upon which it now rules.

## FACTUAL BACKGROUND

This case is the most recent installment in over a decade of litigation between the parties, the genesis of which was a failed 2004 investment between plaintiffs, defendants Steve and Lori Conway, and various LLCs in which the Palczuks and the Conways held ownership interests. In 2004, plaintiffs John and Karen Palczuk formed Johns Folly Ocean Villas, LLC ("JFOV"), a real estate development company, with another couple, Richard and Jennifer Heyl ("the Heyls"). JFOV planned to construct and then rent luxury, high-end villas on an oceanfront lot in St. Johns, United States Virgin Islands. Defendants also invested in JFOV in 2004. In 2007, defendants invested in Heyl Partners Station Plaza ("HPSP"), a company owned by Richard Heyl; they later transferred that interest from HPSP to JFOV. Defendants also fulfilled multiple JFOV capital calls in addition to these two investments. Eventually, JFOV failed, and defendants' lost investment in that company forms the basis of their many claims against plaintiffs.

On August 31, 2009, the Heyls filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Missouri ("the Missouri Bankruptcy Court"). Defendants filed an adversary proceeding in that case, seeking to have debts related to the JFOV investment declared nondischargeable. The Missouri Bankruptcy Court entered judgment for the Heyls, after which a series of appeals ensued. *Conway v. Heyl*, 464 B.R. 867 (Bankr. E.D. Mo. 2012), *appeal dismissed*, 502 B.R. 337 (B.A.P. 8th Cir. 2013), *appeal dismissed*, 770 B.R. 729 (8th Cir. 2014). Having failed to prevail at any level, defendants also filed motions to reconsider the decisions of both appellate courts, both of which were denied.[2]

_____

[2] Defendant Steve Conway has advised the court that he also initiated two complaints with the Missouri Secretary of State ("the Secretary") in which he alleged securities violations relating to the Heyls' and plaintiffs' involvement in both HPSP and JFOV. These matters were

On August 14, 2017, defendants filed a complaint against the Heyls and plaintiffs in the United States District Court for the Eastern District of Missouri ("2017 District Court Action"), seeking to have the court declare the debt nondischargeable under 11 U.S.C. § 523(a)(19). In their complaint in the 2017 District Court Action, defendants acknowledge the Palczuks' 2011 bankruptcy petition filed in this court, and state further that Palczuks "acknowledged and listed their debt to [the Conways, Lorcon, LLC #1, and Lorcon, LLC #4]." Dkt. 1, Ex. 6 (2017 District Court Action Complaint at ¶ 16. With respect to defendants' claims against the Heyls, the matter was referred to the Missouri bankruptcy court; as to the Palczuks, the claims were dismissed by the district court, with that court specifically noting this bankruptcy court's continuing jurisdiction over the plaintiffs' closed bankruptcy case. *Conway v. Heyl*, No. 4:17CV2254 (RLW), 2018 U.S. Dist. LEXIS 136133, 2018 WL 3845952, at *3-5 (E.D. Mo. 2018), *decision reached on appeal sub nom Conway v. Heyl (In re Heyl)*, 590 B.R. 898 (B.A.P. 8th Cir. 2018).

Addressing defendants' claims against plaintiffs, the Missouri district court explained that

the Court finds that dismissal of this action as to the Defendants the Palczuks is appropriate. In their motion, the Palczuks assert that an adversary proceeding to determine dischargeability of a debt is a core proceeding falling within the Bankruptcy Court's jurisdiction. Further, they contend that the Bankruptcy Court in the Eastern District of North Carolina retains jurisdiction over the Palczuks' bankruptcy case, and thus the present cause of action is not properly before this court. The [Conways'] response, aside from being untimely, is nonsensical.

Here, [the Conways] admittedly raise a nondischargeability claim related to core bankruptcy proceedings which took place in the Eastern District of North Carolina. Further, closing the bankruptcy case does not deprive the bankruptcy court of jurisdiction, as "*[i]t is well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered*

---

resolved by the Secretary's entry of two separate consent orders, neither of which were directed against plaintiffs. By email sent on October 25, 2017 to plaintiff Karen Palczuk, the Secretary notified her that it had closed its investigation of JFOV.

*orders*." *In re AFY, Inc.*, 571 B.R. 825, 835 (B.A.P. 8 th Cir. 2017). Thus, the Court finds that it lacks jurisdiction over [the Conways'] claims against the Palczuks and will dismiss those claims accordingly.

*Id*. at *2 (footnote omitted) (emphasis added).

The Missouri bankruptcy court ultimately dismissed defendants' claims against the Heyls. Defendants filed a motion to reconsider the dismissal of these claims against the Heyls, which was denied. Defendants appealed the dismissal to the Bankruptcy Appellate Panel for the Eight Circuit, which affirmed the Missouri bankruptcy court's ruling.[3]  *Conway v. Heyl (In re Heyl)*, 590 B.R. 898 (B.A.P. 8th Cir. 2018). Defendants again petitioned the panel for a rehearing, which was again denied. *Conway v. Heyl (In re Heyl)*, No. 19-1512, 2019 U.S. App. LEXIS 18157 (8th Cir. 2019).

Meanwhile, back in North Carolina, in 2017 the Conways filed a complaint against plaintiffs with the North Carolina Secretary of State regarding the defendants' investment in JFOV, which ultimately resulted in each plaintiff entering an Alford Plea. Each plaintiff pled guilty to one charge of selling unregistered securities. Defendants sought to ensure that plaintiffs were both charged with and convicted of felony security fraud, and sentenced to pay restitution, in hopes of improving their position. To this end, they opposed the Palczuks' entry of the Alford Pleas and, in their victim impact statement dated July 27, 2018 and presented to Wake County District Court Judge Monica Bousman prior to sentencing, expressed their position as follows:

> We don't believe that the current plea here holds the Palczuk's [sic] accountable for their felony crimes, fraudulent actions and illegal behavior. The current plea offer to just 1 felony of an unregistered securities dealer and probation is hollow.

---

[3] In this decision, which will be discussed at length *infra*, the Missouri  bankruptcy court held that the defendant Steve Conway and the Lorcon LLCs had no grounds upon which to pursue a nondischargeability action against the Heyls because they had no "debt" that "results from" an appropriate court order, as required by the plain language of 11 U.S.C. § 523(a)(19).

> We respectfully request that the sentence should be guilty to at least 2 felony counts 1 which **must be felony securities fraud**, which is what this $4,500,000 fraudulent investment scheme is, **felony securities fraud 100%**.
>
> **In addition, a guilty plea to felony securities fraud may help the JFOV victims**. Which is why we feel that Palczuk's [sic] are not wanting to plea to this felony securities fraud, again for their own greed.  This was **ALL securities fraud**!
>
> We respectfully request that the Palczuk's [sic] pay restitution to the JFOV investors as part of this sentence, as a result of their horrible felony crimes they have perpetuated on many innocent hard-working people.
> . . .
> Your honor, please take into account the following **illegal criminal activities** by the Palczuk's [sic], their ongoing fraudulent behavior and their 3 felony crimes they committed in perpetrating this devastating fraudulent investment scheme on their victims in making your determination as to the appropriate sentence.

Dkt. 48-2 at 33 (emphasis in original).  In a judgment entered on July 30, 2018, the state court made no written findings but sentenced the Palczuks to unsupervised probation and imposed a fine of $1000 each and court costs of $180 each, payable to the Wake County Clerk of Court.  The court did not order either of the Palczuks to pay restitution.  Dkt. 42-2 at 12-13, 20-21.

Next, on October 24, 2018, defendants sued plaintiffs in Guilford County Superior Court ("the North Carolina lawsuit"), which was thereafter referred to the North Carolina Business Court. The North Carolina lawsuit asserts nine counts related to the defendants' investment in JFOV.  They include breach of fiduciary duty; breach of duty of loyalty and care under U.S. Virgin Island law; constructive fraud; fraudulent concealment; nondischargeability of debt pursuant to § 523(a)(19)(A)(I); nondischargeability of debt pursuant to § 523(a)(19)(A)(iii); violations of N.C. Gen. Stat. § 78A-1 *et seq*.; negligent misrepresentation; and equitable estoppel.

In response to the North Carolina lawsuit, on November 8, 2018, plaintiffs filed a motion to reopen their chapter 11 case.  On November 21, 2018, plaintiffs filed a motion with the Business Court asking it to stay any further activity in the North Carolina lawsuit "pending resolution of the

Bankruptcy Proceeding," to which defendants consented. The Business Court, in granting plaintiffs' motion, concluded that a stay "would serve judicial economy and is in the interest of justice." The Business Court directed the parties to notify it of this court's ruling on the motion to reopen this case, and, if the case was reopened, to file status reports every 90 days. Furthermore, the Business Court deferred the filing of an answer in the state court proceeding until 30 days after "resolution of the Bankruptcy Proceeding," This court reopened plaintiffs' case by order dated February 5, 2019. Bkcy. Dkt. 229.

On April 4, 2019, plaintiffs filed the instant adversary proceeding. In it, plaintiffs ask the court to declare that all debts to defendants arising prior to confirmation were discharged, determine that no debts claimed by the defendants in the North Carolina lawsuit are nondischargeable pursuant to § 523(a)(19), and to sanction defendants for willfully violating the terms of the discharge injunction. In response, defendants filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to stay the adversary proceeding. Defendants argued that bankruptcy courts lack jurisdiction to determine liability for purposes of § 523(a)(19), or alternatively, that while concurrent jurisdiction existed between this court and the Business Court, this court should stay the adversary proceeding pending a determination by the Business Court. Dkt. 4. The gist of defendants' argument was that the court "which first has possession of the subject must decide it." Reasoning that the North Carolina lawsuit involves the same dischargeability issue and was filed first, defendants argued that the state court should be allowed to proceed to judgment. Finally, defendants argued that the claim for sanctions is not ripe until the § 523(a)(19) determination has been made. Dkt. Nos. 4, 5. Defendants argued further that "[t]he claims and underlying facts [in the North Carolina lawsuit] all derive from the sale of securities in JFOV, LLC and the acts and

representations of Plaintiffs in managing the investments.  The counts are all based solely upon the law of North Carolina or the U.S. Virgin Islands where the JFOV, LLC was registered and organized." Dkt. 5 at 4.  Plaintiffs filed a memorandum in opposition to dismissal on May 29, 2019. Dkt. 7.

The matter was set for hearing[4] on August 22, 2019, at which the court took the matter under advisement and permitted the parties to file supplemental briefs if they wished, which both plaintiffs and defendants elected to do.  Dkt. Nos. 11, 12.  The court subsequently denied defendants' motion to dismiss in a short order entered on August 25, 2019, which was supplemented on September 5, 2019.[5]  Dkt. Nos. 13, 22.  Thereafter, the court directed defendants to file an answer to the complaint.  Dkt. 18.

In the complaint, plaintiffs allege that each and every claim for relief in the 2017 District Court Action and in the North Carolina lawsuit arose prior to confirmation of the Palczuks' chapter 11 plan, and prior to entry of discharge on November 29, 2012, such that defendants' institution and prosecution of these actions violates the discharge injunction.  Plaintiffs alleged further that the North Carolina lawsuit consists of claims which "cannot be nondischargeable under § 523(a)(19) because they (1) are not governed by United States or state law and/or (2) are not violations of

---

[4] At the hearing, the parties presented arguments on the dispositive issues of 1) whether the debt which forms the basis of the dischargeability proceeding is subject to any affirmative defenses; 2) whether defendants have standing to pursue dischargeability of the debt; and 3) whether any determinations from prior proceedings should be given preclusive effect.

[5] In the supplemental order, the court set forth in greater detail the bases upon which it denied defendants' motion to dismiss. The order explained that this court has arising-under subject matter jurisdiction over the issues presented in the debtor-plaintiffs' adversary proceeding, that concurrent jurisdiction existed between this court and the Business Court, that invocation of the "first-filed rule" as urged by defendants was discretionary, and that this court was in the best position to adjudicate the claims in this adversary proceeding.

securities laws or related to the sale of securities." Dkt. 1 ("Complaint") at ¶¶ 86, 87. Plaintiffs conclude that the defendants "willfully violated the discharge injunction when they filed the 2017 [Missouri] District Court Action and the North Carolina Complaint against the Palczuks." Plaintiffs seek punitive sanctions and recovery of the legal fees they incurred in the 2017 District Court Action and in the North Carolina lawsuit.

Defendants responded in opposition to plaintiffs' motion, contending that "the debts owed to the Defendants arise out of violations of securities law and fraud in connection with same. Therefore, Section 523(a)(19) holds these claims to be non-dischargeable." Dkt. 53 at 2. Defendants maintained further that "Plaintiffs fail to recognize that Defendants had an objectively reasonable belief that the claims were enforceable when they filed their suit," and that defendants are for that reason "not subject to liability for contempt or related sanctions." *Id*. On this latter point, defendants filed their own motion for summary judgment, seeking entry of it in their favor on the "defense of fair ground of doubt." Dkt. 54 at 2. The court turns now to the competing motions.

## DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the record which show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 323-24.

Thus, the court's function at the summary judgment state is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

Instead, the court must determine whether a movant has met his burden of showing that no genuine dispute as to any material fact exists, such that the movant is entitled to judgment as a matter of law. Here, both plaintiffs and defendants have moved for summary judgment on the question of whether defendants can show that the plaintiffs are obligated to them for debts that are nondischargeable under 11 U.S.C. § 523(a)(19). Non-dischargeability provisions are "to be interpreted narrowly." *In re Theonnes*, 536 B.R. 680, 697 (Bankr. D.S.C. 2015), *citing Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (noting the "'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed'" (internal citation omitted)); *see also In re Causey*, 519 B.R. 144, 154 (Bankr. M.D.N.C. 2014) ("If this Court were to interpret Section 523(a) as allowing equitable exceptions to discharge under general common law principles, such a holding would impermissibly widen the scope of these provisions of the Code and, in effect, swallow-up or render superfluous those exceptions enumerated in Section 523(a).").

The threshold issue to which the court turns first is whether the claims asserted by the defendants in the North Carolina lawsuit[6] constitute nondischargeable debts that come within the scope of 11 U.S.C. § 523(a)(19). Section 523(a)(19) provides as follows:

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) does not discharge an individual debtor from any *debt* –

---

[6] The plaintiffs also claim a violation of the discharge injunction in connection with the 2017 District Court action filed by defendants in Missouri, which was dismissed for lack of jurisdiction. Plaintiffs seek the attorney fees they incurred as a result of that action as a component of sanctions in this proceeding.

(19) that –
(A) is *for* –
    (i) the violation of any of the Federal securities laws ..., any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
    (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; *and*
(B) *results,* before, on, or after the date on which the petition was filed, *from* –
    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
    (ii) any settlement agreement entered into by the debtor; or
    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (emphasis added).  For the reasons set out below, the court concludes that they are not.

The claims advanced by defendants in the North Carolina lawsuit do not, and cannot, qualify as nondischargeable debt within the plain language of the statute.  While defendants have asserted many *claims* against plaintiffs, multiple times and in a variety of forums, what they have not shown is the existence of a statutorily qualifying *debt* that is "for" a violation of the sort articulated in subsections (A)(ii) or (ii).  In addition, because both subsections (A) *and* (B) must be satisfied, such a debt must *result from* a judgment, agreement, or other order (collectively herein, for ease of reference, a "securities judgment") as articulated in subsections (B)(i-iii).  There is no dispute that the defendants have grievances and claims, but what they do not have is a securities judgment that can check both of those boxes: being *for* a subsection (A) violation of securities laws, and *resulting from* a securities judgment as outlined in subsection (B).

A review of the definitional section of the Bankruptcy Code establishes that this is so.  As was thoroughly reviewed by the bankruptcy court in *In re August*,

> [s]ection 523(a) provides that certain "debts" are not dischargeable.  A debt is
> defined in section 101(12) as a "liability on a claim."  A "creditor" is an entity that
> has claim against the debtor.  11 U.S.C. § 101(10).  And a claim means "a right to
> payment, whether or not reduced to judgment, liquidated, unliquidated, fixed,
> contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or
> unsecured."  11 U.S.C. § 101(5)(A).
>
> Accordingly, every dischargeability proceeding involves two separate
> inquiries.  First, *does the creditor hold an enforceable obligation* under non-
> bankruptcy law.  Second, is the debt non-dischargeable under bankruptcy law,
> specifically § 523(a) .... In the absence of an enforceable obligation, there is no "debt
> that can be nondischargeable.

*In re August*, 448 B.R. 331, 346-47 (Bankr. E.D. Pa. 2011).  Put another way, "[a]lthough Section 523 lists those types of debts that will be excepted from a debtor's discharge, the exception to discharge itself does not make a debtor liable to a creditor."  *In re Campbell*, 545 B.R. 875, 886 (Bankr. M.D.N.C. 2016) (citation omitted).  Instead, "that *existing liability* generally must be established under non bankruptcy law."  *Id.; see also In re Mazik*, 592 B.R. 604, 609 (Bankr. E.D. Pa. 2018) ("Implicit in a determination that a debt is nondischargeable under 11 U.S.C. § 523(a) is the requirement that there be an enforceable debt under applicable nonbankruptcy law.").  Here, however, defendants do not have "debts" representing plaintiffs' liability on defendants' claims – to the contrary, that is what defendants undertook, *post-discharge*, to seek.  And defendants certainly do not have the specific sort of debt – a securities judgment in their favor – that could come within the scope of § 523(a)(19).

Significantly, this issue already has been litigated by defendants, and decided against them, in connection with the many of the exact same facts and legal issues that give rise to their ongoing dispute with the plaintiffs in this proceeding.[7]  In an opinion issued by the Bankruptcy Appellate

---

[7] The court makes this observation not to delve into any of the parties' arguments about res judicata, collateral estoppel, or issue or claim preclusion, because the court need not and

Panel for the Eighth Circuit in October of 2018, the panel considered whether a consent order entered in the proceeding brought by the Missouri Securities Division against Richard Heyl, the Palczuks' partner in JFOV, LLC (and a chapter 7 debtor in that state), gave rise to a debt that could be deemed a nondischargeable debt to a defrauded investor under § 523(a)(19), *i.e.* defendant Steve Conway. In its opinion, which notably was entered less than a week before defendants filed the North Carolina lawsuit, that court held that it could not, and affirmed the bankruptcy court's dismissal of the complaint. *Conway v. Heyl (In re Heyl)*, 590 B.R. 898 (B.A.P. 8th Cir. 2018).

The context in that matter was a second adversary proceeding brought by Steve Conway and the Lorcon entities (collectively, "Conway") against Heyl.[8]  In his complaint, Conway asserted, correctly, that based upon his written complaint to the Enforcement Section of the Missouri Securities Division of the Office of the Secretary of State ("Enforcement Section"), the Enforcement Section investigated his claims of fraudulent sale of investment interests in JFOV and another entity, which resulted in a consent order with Heyl. On review, the panel noted that Conway's "entire case is premised upon a purported debt that 'results from' the Consent Order." *Id.* at 903. Specifically, Conway's complaint "request[ed] that the Court declare that, as a result of a Consent Order entered against Debtor [Heyl] on April 23, 2015, the Debt described below is nondischargeable under 11

---

therefore does not reach those issues. Instead, the court brings forward the telling fact that this issue has been thoroughly addressed *with these parties* to make the point that defendants have heard all this before, just prior to filing the North Carolina lawsuit.

[8] Richard and Jennifer Heyl filed a petition under chapter 7 of the Bankruptcy Code in the Eastern District of Missouri in August of 2009. Steven Conway and the Lorcon LLCs commenced the first adversary proceeding in August of 2010, "alleging false pretenses, false representation and actual fraud related to the JFOV, LLC investment and seeking a determination that the debt is discharged under § 523(a)(2)."  590 B.R. at 900.  The bankruptcy court entered judgment for Heyl, concluding that Conway failed to meet his burden of proof as to proximate causation. *Id.*

U.S.C. § 523(a)(19)," and was on that basis excepted from the discharge Heyl received in his underlying bankruptcy case. *Id*. at 902-03.

The consent order, the panel wrote, "acknowledged that the Missouri Resident who initiated the complaint had incurred a $79,500.00 investment loss but did not include a monetary judgment or any other form of relief in favor of Conway, LorCon #1, and/or any other creditors." *Id.* at 900. The panel concluded that

> [t]he Bankruptcy Court found that *no debt to Appellants [Conway and the Lorcon LLCs] resulted from the Consent Order, and we agree*. The only debt that resulted from the consent order is a debt from Heyl and his company to the Enforcement Section for a civil penalty and costs. By its plain language, the Consent Order does not establish any debt owed to Appellants or anyone else. The closest the Consent Order comes to doing so is a finding of fact that the "Missouri Resident" lost a total of Seventy Nine Thousand Five Hundred Dollars ($79,500.00) from investments with Heyl. As the Bankruptcy Court noted, *that is not a judgment or right of collection; it is just a finding of a loss on investments*.

*Id*. at 903 (emphasis added). The panel went on to review a similar result in the Ninth Circuit, wherein the court emphasized that to establish the § 523(a)(19) exception to discharge, the debt must (1) be "for" a securities law violation or fraud in connection with a sale of a security, *and* (2) "result from" some judicial or administrative proceeding or settlement agreement." *Tradex Global Master Fund SPC LD v. Chui*, 702 F. App'x 632, 633 (9th Cir. 2017) (emphasis added), *affirming* 559 B.R. 520 (N.D. Ca. 2016); *see also In re Allison*, AP No. 11-00312-8-SWH, 2012 WL 3775982, at *3 (Bankr. E.D.N.C. 2012) ("In order for a debt to be non-dischargeable under this section, both prongs must be satisfied: (1) there was a violation of securities law or fraud in connection with the sale of the security; and it resulted in a debt which was memorialized in a judgment, settlement, or decree.").

Defendants' proffered authorities in support of their motion for summary judgment on this topic – *In re Chan*, 355 B.R. 494 (Bankr. E.D. Pa. 2006), and *In re Webster*, 2010 WL 4625736 (Bankr. D.C. 2010) – do not support their cause.  In *Chan*, that court did not conclude that the BAPCPA amendments to § 523(a)(19) removed *any and all* temporal requirements in connection with securing the debt a creditor seeks to have deemed nondischargeable; rather, the phrase "before, on, or after the date on which the petition was filed" was "intended to make clear that a debt arising under the federal securities laws or as a result of fraud in connection with the sale of a security may be determined nondischargeable under § 523(a)(19) even if the liability was not fixed *prior to the commencement of the bankruptcy case*." *Chan*, 355 B.R. at 504.  Likewise, the *Webster* decision's discussion of time limitations in the context of pursuing a dischargeability determination under § 523(a)(3) or (a)(19) pertained to a creditor who was not listed or scheduled, and thus did not have notice or actual knowledge of the bankruptcy case.

Defendants construe these cases to mean that "the Defendants had authority to pursue this action at any time."  Dkt. 57 at 12.  Defendants further maintain that "[n]o bankruptcy provision or other statute or case law requires that a § 523(a)(19) claim be reduced to judgment prior to discharge for a creditor to assert its right to pursue such claim, and Defendants have no deadline to pursue the dischargeability action."  Dkt. 15 at 7.  The court wholeheartedly disagrees.

As discussed at length above, the statutory nondischargeability exception under which defendants seek to proceed requires precisely such a judgment.  *See* 11 U.S.C. § 523(a)(19) ("results, before, on, or after the date on which the petition was filed, from ... any judgment, order, consent order, or decree"); *Heyl*, 590 B.R. at 903-04; *In re Theonnes*, 536 B.R. 680, 693-94 (Bankr. D. S.C. 2015).  And, finally, the court must acknowledge the legal elephant in the room, which is that the

16

most obvious reason the defendants do not have such a judgment is that they did not bring a timely action to obtain one. The court lacks insight into why that is, given that defendants were actively engaged in litigation against the Heyls in 2010, when they commenced an adversary proceeding in the Heyls' then-pending chapter 7 case seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(2). For whatever reason, defendants did not engage with or in any way assert their interests against plaintiffs prior to the date on which plaintiffs filed their chapter 11 petition in this court, and similarly did not engage with or assert their interests in the bankruptcy case. Their right to so do was cut off by entry of the plaintiffs' discharge on November 29, 2012.[9]

In sum, though defendants have pursued plaintiffs in multiple forums in two states, they do not have a pre-discharge securities judgment to show for it. Under the plain language of the statute, there is no *debt* of the kind specified as nondischargeable under § 523(a)(19). Accordingly, plaintiffs' first claim for relief, which seeks a determination that there is no debt owed by plaintiffs to defendants that is nondischargeable pursuant to 11 U.S.C. § 523(a)(19), will be allowed.

## II.    Willful Violation of Discharge Injunction

Plaintiffs' second cause of action alleges that defendants' efforts to recover their financial losses constitute not just violations of the discharge injunction, but also were knowingly undertaken in willful disregard of that discharge injunction and warrant sanctions in an amount not less than the sum of the attorneys' fees incurred by plaintiffs in reopening the bankruptcy case to address the violations, and in defending both the 2017 District Court Action in Missouri and the North Carolina

---

[9] The court notes that defendants' right to do so arguably was cut off at an earlier point, upon entry of the confirmation order; however, because resolution of that question is not relevant for purposes of determining this summary judgment motion, the court need not and therefore does not engage in a closer examination of that question at this time.

lawsuit.  Defendants respond that, "[s]etting aside the several issues regarding dischargeability and the propriety of the Defendants' claims, the Plaintiffs fail to recognize that the Defendants had an objectively reasonable belief that the claims were enforceable."  Defs.' Obj. to Pls.' Mot for Summ. J. (Dkt. 53) at 2.  According to defendants, "[w]hile the issue of whether the Conways' claims were discharged is a complicated question, the issue of whether it was objectively reasonable for the Conways to believe the claim was enforceable is not.  In the converse, the difficulty in navigating the dischargeability issue and various unpleaded defenses only underscores that the Conways had an objectively reasonable belief that the claims were enforceable."  Defs.' Mem. of Law (Dkt. 57) at 18.

To be sure, defendants have shown a marked lack of attention to the necessary elements of the arguments they assert.[10]  For example, as already discussed, establishing that a debt is nondischargeable  under § 523(a)(19) requires that there be a securities judgment of the kind reviewed above.  Yet, in support of their rebuttal to plaintiffs' argument that defendants' claims are collaterally estopped, defendants emphasize that in the 2017 District Court Litigation, "that case was dismissed for lack of jurisdiction.  *There was no substantive ruling on Defendants' claims.  None of Defendants' claims have been litigated or determined in another judicial or administrative proceeding.  There has not been a prior determination of whether Defendants are owed a debt by Plaintiffs*."  Defs.' Mem. of Law on  Dispositive Issues (Dkt. 15) at 5 (emphasis added).  Further, "[n]o determination has yet to be made regarding the validity of the debt and Defendants should be

---

[10] Defendants' filings have included the assertion of sometimes contradictory and inconsistent legal theories, which the court attributes in part to the fact that in this proceeding alone, the defendants are on their third attorney.

permitted to seek a judicial determination of the Plaintiff's liability on the claims asserted in the [North Carolina lawsuit]." *Id*. at 8.

It may be that *if* defendants' claims against plaintiffs had been advanced at the appropriate time and in the appropriate forum, they may have resulted in a *debt* owed by plaintiffs to defendants *for* a violation of securities laws within the meaning of 523(a)(19)(A), *resulting from* a securities judgment within the meaning of § 523(a)(19)(B). But that has not happened. Previously, in denying defendants' motion to dismiss this adversary proceeding, the court stated that it "has not, and will not predetermine the sanctions issue. It will note, however, that the safest route for the Defendants to have taken to determine the viability of their § 523(a)(19) claim would have been to file a motion in this court to ensure that neither the release provisions of the confirmed plan nor the discharge injunction were violated. Any other route brings the risk, if not the certainty, of sanctions." Dkt. 22 at 10. Indeed, in the 2017 District Court Action, the district court made precisely this point. *Conway v. Heyl*, 2018 WL 3845952, at *2.

Here, the extensive history between these parties speaks volumes, and it is apparent that the defendants remain wholly committed to pursuit of the funds they lost in the failed JFOV investment and, equally, the parties they hold responsible for those losses: the Palczuks and, previously, the Heyls. Undaunted by their lack of success in the 2017 District Court Action, and in North Carolina's administrative and criminal court arenas, defendants sought again to assert their claims, this time in the North Carolina lawsuit, in disregard of the existence and effect of the discharge injunction. Defendants did not file a claim in the plaintiffs' bankruptcy case, did not object to confirmation, and did not file a complaint to determine nondischargeability. In short,

19

notwithstanding a demonstrated propensity to litigation, defendants simply failed to avail themselves of the most effective – and timely – means of bringing their claims forward.

Under the Supreme Court's recent decision in *Taggart*, to which both sides point, the civil contempt inquiry focuses on a "fair ground of doubt" standard. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id.* at 1804. Accordingly, under that standard, "civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802. In this matter, it is abundantly clear that defendants initiated and engaged in litigation against plaintiffs in violation of the discharge injunction, and plaintiffs' second claim for relief also will be allowed.

The court does not at this time make a determination as to the nature and extent of the damages and/or sanctions to be awarded in connection with plaintiffs' second claim, and plaintiffs are directed to prepare and file a bill of particulars regarding those fees and addressing the related sanctions sought. Upon filing, defendants may, within fourteen (14) days, file a response to same. The court will, if requested, schedule the matter for hearing.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is **ALLOWED**. Defendants' motion for summary judgment is **DENIED**.

Defendants are further **ORDERED** to take all appropriate steps, within fourteen (14) days of entry of this order, to dismiss the complaint filed by them against plaintiffs in the Guilford County Superior Court (Case. No. 18-CVS-8687).

20

**END OF DOCUMENT**