**SO ORDERED.**

**SIGNED this 5 day of August, 2021.**

*Stephani W. Humrickhouse*

Stephani W. Humrickhouse
United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 11-04017-8-SWH |
| JOHN JEROME PALCZUK and | CHAPTER 11 |
| KAREN ELIZABETH PALCZUK, | |
| | |
| DEBTORS | |

| | |
|---|---|
| JOHN JEROME PALCZUK and | ADVERSARY PROCEEDING |
| KAREN ELIZABETH PALCZUK, | NO. 19-00001-8-SWH |
| | |
| Plaintiffs, | |
| v. | |
| | |
| STEVE CONWAY, LORI CONWAY, LORCON, | |
| LLC#1, and LORCON, LLC #4, | |
| | |
| Defendants | |

### ORDER AWARDING SANCTIONS
### FOR VIOLATION OF DISCHARGE INJUNCTION

The matter before the court in this adversary proceeding is a final determination of the amount and nature of monetary damages and sanctions to be awarded to the plaintiffs, John and Karen Palczuk, as provided in the court's order regarding cross-motions for summary judgment entered on September 25, 2020.  (Dkt. 62)  After entry of that order and as requested by the court,

on November 5, 2020, plaintiffs provided a bill of particulars with respect to their damages. (Dkt. 82)  The parties then attempted, unfortunately without success, to achieve resolution of the matter through judicial mediation.  That effort was followed by the most recent hearing in this long and convoluted proceeding, which was held in Raleigh, North Carolina, on April 15, 2021.  At that time the court heard the arguments of counsel and directed the parties to submit affidavits in lieu of testimony with regard to the court's calculation of sanctions. Plaintiffs Karen Palczuk and John Palczuk submitted affidavits (Dkt. 135, 136), as did defendant Steve Conway.  (Dkt. 140)  After full review, and for the reasons set out below, the court will require defendants to pay to plaintiffs damages in the amount of $121,867.67.

## PROCEDURAL HISTORY AND DISCUSSION

This order determines the nature and amount of monetary sanctions to be awarded to plaintiffs as forecast by the court's disposition of the parties' cross-motions for summary judgment in its order of September 25, 2020.  (Dkt. 62)  In that order, the court allowed plaintiffs' motion for summary judgment as to liability, agreeing with plaintiffs that they owed no debt to defendants that was nondischargeable and further that plaintiffs had established defendants' willful and repeated violations of the discharge injunction.  Specifically, the court held that "defendants' efforts to recover their financial losses constitute not just violations of the discharge injunction, but also were knowingly undertaken in willful disregard of that discharge injunction and warrant sanctions in an amount not less than the sum of the attorneys' fees incurred by plaintiffs in reopening the bankruptcy case to address the violations, and in defending both the 2017 District Court Action in Missouri and the North Carolina lawsuit."  Dkt. 62 at 17.  As the court explained:

> Here, the extensive history between these parties speaks volumes, and it is apparent that the defendants remain wholly committed to pursuit of the funds they

2

lost in the failed JFOV investment and, equally, the parties they hold responsible for those losses[1]: the Palczuks and, previously, the Heyls.  Undaunted by their lack of success in the 2017 [Missouri] District Court Action, and in North Carolina's administrative and criminal court arenas, defendants sought again to assert their claims, this time in the North Carolina lawsuit, in disregard of the existence and effect of the discharge injunction. Defendants did not file a claim in the plaintiffs' bankruptcy case, did not object to confirmation, and did not file a complaint to determine nondischargeability. In short, notwithstanding a demonstrated propensity to litigation, defendants simply failed to avail themselves of the most effective – and timely – means of bringing their claims forward.

Under the Supreme Court's recent decision in *Taggart*, to which both sides point, the civil contempt inquiry focuses on a "fair ground of doubt" standard. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).  "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id.* at 1804.  Accordingly, under that standard, "civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802.  In this matter, *it is abundantly clear that defendants initiated and engaged in litigation against plaintiffs in violation of the discharge injunction, and plaintiffs' second claim for relief also will be allowed*.

*Id.* at 19-20 (emphasis added).  Applying the standard set out in *Taggart*, not only is it clear that there is no fair ground of doubt as to whether the discharge injunction barred much of defendants' conduct – it did – it is equally plain that defendants had no "objectively reasonable basis" upon which to conclude that their conduct in pursuing civil litigation to recoup their lost investment, after entry of discharge in the Palczuks' bankruptcy case, could possibly be lawful.  *See Taggart*, 139 S. Ct. at 1801.

The court determined in the order allowing summary judgment that an award of the attorney fees plaintiffs incurred in consequence of defendants' actions would be appropriate, but did "not at that time make a determination as to the nature and extent of the damages and/or sanctions to be

---

[1] Between 2004-2008, the Palczuks and their related LLCs invested $144,000.00 in JFOV, and the loss of that investment is at the root of this litigation.

awarded in connection with plaintiffs' second claim" for wilful violation of the discharge injunction.

Dkt. 20.   The court directed plaintiffs to submit a bill of particulars detailing those costs, which

plaintiffs did on November 5, 2020.  (Dkt. 82)  In it, plaintiffs sought recovery of the following

compensatory and punitive damages:

I.      Damages incurred in reopening the bankruptcy case to file the adversary proceeding
        A.      Legal fees and costs to prosecute the proceeding: $57,719.52
        B.      Quarterly fees paid to keep the bankruptcy case open: $5,200.00

II.     Damages incurred in defending lawsuits filed in violation of the discharge injunction
        A.      Legal fees and costs to defend the Guilford County suit: $2,159.00
        B.      Legal fees and costs to defend the Missouri District Court lawsuit: $11,129.25

III.    Damages incurred due to the Missouri and North Carolina Secretary of State proceedings:
        A.      Legal fees to defend the North Carolina criminal proceeding which was referred by
                the N.C. Secretary of State: $112,816.25 ($73,846.25 and $38,970.00)
        B.      Legal fees to defend the 2019 Missouri Secretary of State proceeding: $26,361.50
                ($23,113.50 and $3,248.00)
        C.      Accounting fees necessary to defend the N.C. criminal proceeding, which was
                referred by the N.C. Secretary of State: $1,625.00
        D.      Lost wages/compensation of Karen Palczuk: $1,125,000.00
        E.      Increased health care costs due to Karen Palczuk's job loss: $34,881.00
        F.      Court fines paid in North Carolina: $2,320.00

IV.     Punitive damages of $1,000,000.00

Dkt. 82.  Defendants filed a response in which they acknowledged the court's power under § 105

to award actual damages for violations of the discharge injunction, but argued that damages were

unwarranted because they have at all times simply sought "to adjudicate this matter fairly." Dkt. 93

at 2.

        Plaintiffs subsequently filed discovery requests upon defendants, with respect to which

defendants filed a motion seeking a protective order.  (Dkt. Nos. 98, 101)  A hearing on the bill of

particulars and on defendants' motion was commenced on December 8, 2020 but then was continued

in order to facilitate the parties' consideration of whether mediation would be beneficial.  Although

judicial mediation was undertaken in January of 2021, it resulted in an impasse, after which the court set a date for resumption of that hearing and to resolve plaintiffs' motion for sanctions due to Ms. Conway's failure to actively participate in the mediation. At that hearing, the motion for protective order was withdrawn and the motion for sanctions was denied.

With the consent of the parties, the court took evidence of plaintiffs' alleged damages by requesting that both plaintiffs and defendants submit affidavits in lieu of live testimony. The court's reasoning for this was twofold: First, having already determined defendants' liability for violation of the discharge injunction, the only remaining question to be resolved by the court was (and is) by definition a matter of calculation of damages and, if appropriate, punitive sanctions. Second, the court determined that taking the live testimony of these litigants, all of whom are demonstrably and irrevocably committed to positions they have held for many years and of which the court is well aware, would have provided no assistance to the court in making those calculations and instead was only likely to inflame the personal nature of this dispute. In their affidavits, plaintiffs again reiterated the costs asserted in the bill of particulars and stated further that subsequent to filing that document, they had incurred an additional $19,298.40 in legal fees. (Dkt. 135 at 4, Dkt. 136 at 4)

Defendants objected to the bill of particulars and defendant Steven Conway filed an affidavit in opposition to plaintiffs' affidavits, and in support of impeachment. (Dkt. Nos. 93, 140) Mr. Conway does not challenge plaintiffs' recitation of the amounts of their legal bills, but still contends that defendants should not be required to pay any of them. He argues further that plaintiffs' claims of lost wages and increased health care costs are unrelated to any of defendants' actions, and that punitive damages are not warranted. The court turns now to its calculations.

5

## I.      Actual Damages

The actual damages sought by the Palczuks for legal and court costs in reopening the bankruptcy case and instituting this proceeding total $82,217.92. The damages attributable to costs incurred in defending the North Carolina state and Missouri district court lawsuits is $13,288.25, and the sum plaintiffs attribute to the Missouri and North Carolina Secretary of State proceedings, plus the criminal prosecution that ensued in North Carolina, is $143,122.75. All together, plaintiffs calculate their actual damages from legal fees and costs in the total amount of $238,628.92. Separately, the total sum sought as actual damages based on grounds of Ms. Palczuk's loss of employment and increased health care costs is $1,159,881.00. The court will award actual damages of $121,868.67, with that amount consisting of plaintiffs' total costs in reopening the bankruptcy and prosecuting the adversary proceeding, defending the Guilford County action, defending the 2017 Missouri District Court action , and defending the 2019 proceedings before the Missouri Secretary of State.[2]

_____

[2] The Palczuks seek to recover $3,248 paid to the Armstrong Teasdale firm for defending them in the 2019 Missouri Secretary of State action (attorney affidavit at Dkt. 84), and another $23,113.50 paid to the Mason Law Firm, also for the 2019 Missouri Secretary of State proceeding (attorney affidavit at Dkt. 86). The Missouri Secretary of State concluded an initial investigation of JFOV and the Palczuks by October 2017, and initiated this second inquiry in 2019 at the urging of the defendants. Dkt. 48-2 Exs. G, H. The second investigation was dismissed by the Secretary on February 13, 2020.

Though the distinction is a close one, the court views this second round of inquiry by the Missouri Secretary of State in 2019 in a different light than it does the inquiry by the North Carolina Secretary of State in 2017 (and the criminal prosecution that followed). Not only was defendants' approach to the Missouri Secretary of State in 2019 focused on defendants' stated intent to "recover our losses," it coincided with not one but two decisions rendered by Missouri federal courts in which defendants were specifically informed that this court retained jurisdiction over their asserted nondischargeability claim as to the Palczuks, and could thus interpret or enforce orders even in a closed case, and, further, that a party seeking to have a debt declared nondischargeable under 11 U.S.C. § 523(a)(19) must satisfy both parts of a two-prong requirement, which defendants could not do. _Conway v. Heyl_, 2018 WL 3845952 *2 (E.D. Mo.

The debtors' petition was filed on May 25, 2011.  It listed the defendants as co-debtors, and included them on the creditor matrix.  Defendants did not file a proof of claim[3] and took no steps within the Palczuks' bankruptcy case to assert the existence of a debt owed to them by plaintiffs, or to address its  dischargeability, notwithstanding the fact that defendants have consistently asserted that their claims sound in fraud, breach of fiduciary duty, and other actions that conceivably could be nondischargeable.  The debtors' Chapter 11 plan was confirmed on January 5, 2012. (Bankr. Dkt. 123)  The plan includes a statement of confirmation as a waiver against and release of debtors, and specifically provides that by seeking confirmation, debtors sought an order from the court discharging "all claims and liens which existed prior to confirmation of the plan, except for liens, payments and distributions expressly provided for by the plan."  Bankr. Dkt. 70 at 8.  The Palczuks' discharge was entered on November 29, 2012.  (Bankr. Dkt. 205)  In these circumstances, a bankruptcy court may, in the exercise of its discretion, hold a creditor in civil contempt for violating the discharge injunction. 11 U.S.C. § 105(a).

As the *Taggart* Court explained in rejecting the Ninth Circuit's "subjective good faith" standard, that standard – which is in essence the one defendants ask the court to apply – "relies too heavily on difficult-to-prove states of mind."  *Taggart*, 139 S. Ct. at 1803.  As a result, excusing a creditor's conduct based on a good-faith belief that the discharge order does not apply to their claim

---

Aug. 13, 2018) (agreeing with plaintiffs that this bankruptcy court retained jurisdiction over plaintiffs' case and defendants' assertion of a nondischargeability claim under § 523(a)(19); *Conway v. Heyl (In re Heyl)*, 590 B.R. 898, 902-03 (B.A.P. 8th Cir. 2018) (explaining operation of § 523(a)(19)).

[3] In the 2017 complaint to declare debt nondischargeable filed by defendants in the United States District Court for the Eastern District of Missouri, defendants state that they *did* file a proof of claim in the underlying bankruptcy case.  Dkt. 140-5 at p. 4, ¶ 17. In fact, they did not.

"may too often lead creditors who stand on shaky legal ground to collect discharged debts, forcing debtors back into litigation (with its accompanying costs" to protect the discharge that it was the very purpose of the bankruptcy proceeding to provide." *Id.* Here, the court concludes that defendants' actions in connection with the matters for which the court awards damages were undertaken in knowing disregard of the discharge injunction, and without any objectively reasonable basis upon which defendants could have concluded that their actions were lawful.

Defendants simply refused to cease their efforts to establish and recover on their "self-effectuating § 523(a)(19) claims" notwithstanding the plain language of that statute *and even after having that language, and its application to them, explained to them by multiple federal judges*. Indeed, in opposing plaintiffs' motion to reopen this bankruptcy case in 2018, defendants still insisted that this court lacked jurisdiction, and argued that "nothing in the plan prohibits the claims now asserted" notwithstanding the plan's preclusion of future litigation. (Bankr. Dkt. 222)  Having reviewed the extensive history between these parties and voluminous filings in multiple forums, the court concludes that there is no objectively reasonable basis upon which defendants could have concluded that their conduct was lawful under the discharge order. And again, as the court observed in previous orders: "[T]he safest route for the Defendants to have taken to determine the viability of their § 523(a)(19) claim would have been to file a motion in this court to ensure that neither the release provisions of the confirmed plan nor the discharge injunction were violated.  Any other route brings the risk, if not the certainty, of sanctions."  Dkt. 22 at 10, *see also* Dkt. 62 at 19.

The court does not award legal fees and costs incurred by plaintiffs in connection with the North Carolina Secretary of State proceeding, or their defense of the criminal prosecution initiated by the Wake County District Attorney's office.  This is because defendants' efforts to contact the

office of the Secretary of State to complain about what they perceived to be violations of civil or criminal law do not give rise to sanctions, nor can the independent decision of the Secretary to refer the matter to the office of the Wake County District Attorney, or the District Attorney's subsequent decision to initiate a criminal prosecution of plaintiffs. Those matters reflect those offices simply doing their jobs, based on their independent determinations that their inquiries were necessary due to plaintiffs' conduct.

The court likewise finds no basis upon which Ms. Palczuk's loss of employment (and any attendant increase in health care costs) may be attributed to defendants' violation of the discharge injunction. Indeed, the court cannot conclude from plaintiffs' affidavits that her termination was even necessarily due to the Secretary of State's investigation or plaintiffs' entry of guilty pleas[4]; even if it was, as noted above, neither the initiation of those proceedings nor the consequences of them are attributable to defendants.

## II. Punitive Damages

The court in its discretion will not award punitive damages. It appears to the court that both plaintiffs and defendants are so deeply entrenched in this long-standing dispute and have adopted such self-serving interpretations of both long-ago and unfolding events that there appears to be little to no likelihood of any court explanation or disposition that could cause *both* sides to consider the matters fully considered, and closed. The court is of the view that punitive damages in any amount, large or small, would likely spark yet another wave of attempts by the parties to "get right" with each other. These proceedings must end.

---

[4] From the evidence presented in Mr. Conway's affidavit, it appears equally likely that termination of Ms. Palczuk's employment was due to a sanction imposed by the North Carolina State Board of Certified Public Accountant Examiners. Dkt. 140 at 8 & Ex. G.

9

## CONCLUSION

The court has awarded civil contempt damages in this proceeding to the extent it deems them useful to the health and efficacy of the bankruptcy system, and to the extent required to fairly compensate plaintiffs for the legal fees and costs that they incurred due to those actions of defendants that clearly were undertaken in disregard of the discharge injunction and with no objectively reasonable basis. It is the considered opinion of the court that to award more extensive damages, or to impose a purely punitive sanction, would be counter-productive to a fundamental underpinning of the bankruptcy process – the goal of finality – which is what the discharge injunction itself seeks to support.

Accordingly, and for the foregoing reasons, defendants are directed to pay to plaintiffs' attorney the sum of $121,867.67 within thirty days as a sanction for violations of the discharge injunction, that amount being the sum of plaintiffs' actual damages attributable to defendants' violations. A separate judgment will be entered.

## END OF DOCUMENT