**SO ORDERED.**

**SIGNED this 29 day of June, 2023.**

_____
**David M. Warren**
**United States Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**JOHN JEROME PALCZUK**
**KAREN ELIZABETH PALCZUK**

        **DEBTORS**

CASE NO. 11-04017-8-DMW

CHAPTER 11

---

**JOHN JEROME PALCZUK and**
**KAREN ELIZABETH PALCZUK**

        **PLAINTIFFS**

    vs.

**STEVEN CONWAY, LORI CONWAY,**
**LORCON, LLC #1, and LORCON, LLC**
**#4**

        **DEFENDANTS**

**ADVERSARY PROCEEDING NO.**

**19-00001-8-DMW**

## MEMORANDUM OPINION

This matter comes before the court upon the Judgment entered on July 15, 2022 by the United States District Court for the Eastern District of North Carolina ("North Carolina District Court") which vacates this court's Order Awarding Sanctions for Violation of the Discharge Injunction ("Sanctions Order") and accompanying Judgment entered on August 5, 2021 and remands for consideration the Second Claim for Relief: Sanctions for Violation of the Discharge

Injunction Against Steven Conway, Lori Conway, and Lorcon, LLC #4 ("Second Claim for Relief") set forth in the Complaint filed by John Jerome Palczuk and Karen Elizabeth Palczuk ("Plaintiffs") on April 4, 2019. The court conducted a trial on March 7, 2023 and April 19, 2023 in Raleigh, North Carolina to consider the Plaintiffs' request for sanctions. William P. Janvier, Esq. and Kathleen O'Malley, Esq. appeared for the Plaintiffs, and J.M. Cook, Esq. appeared for Steven Conway, Lori Conway, Lorcon, LLC #1, and Lorcon, LLC #4 ("Defendants"). On June 29, 2023, the court entered a Judgment in favor of the Defendants. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, this Opinion sets forth the court's findings of fact and conclusions of law in support of the Judgment.

History of the Proceedings

The Plaintiffs filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code[1] on May 25, 2011 and scheduled the Defendants as co-debtors in the case in connection with the Defendants' investment in Johns Folly Ocean Villas, LLC ("JFOV"), a failed real estate development company formed by the Plaintiffs and Richard and Jennifer Heyl ("Heyls"). The Defendants received notice of the Plaintiffs' bankruptcy filing and were included on the mailing matrix.

On January 5, 2012, the court confirmed the Plaintiffs' Chapter 11 Plan ("Plan") which provided for a discharge pursuant to § 1141(d)(5)(A) and included a waiver and release of the right to pursue litigation and causes of action against the Plaintiffs. After the Plaintiffs completed payments under the Plan, they received a discharge on November 29, 2012, and the case was closed on January 30, 2013. The Defendants did not file a proof of claim, object to discharge or

---

[1] References to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

dischargeability, object to the Plan, vote on the Plan, or otherwise participate in the Plaintiffs' bankruptcy case.

In 2017, the Defendants filed a complaint with the North Carolina Secretary of State regarding their investment in JFOV, and the Plaintiffs each entered an Alford Plea of guilty to one charge of selling unregistered securities. On August 14, 2017, the Defendants initiated an action ("Missouri Action") against the Defendants and the Heyls, who had received a Chapter 7 discharge, with the United States District Court for the Eastern District of Missouri ("Missouri District Court"), seeking to have alleged debts related to JFOV declared nondischargeable pursuant to § 523(a)(19). The Missouri District Court dismissed that action as to the Defendants, noting this court's continued jurisdiction over the Plaintiffs' closed bankruptcy case. On October 24, 2018, the Defendants initiated a lawsuit ("State Court Action") against the Plaintiffs in the Superior Court for Guilford County, North Carolina, asserting nine causes of action related to the Defendants' investment in JFOV, including that the alleged debts owed by the Plaintiffs to the Defendants were nondischargeable pursuant to § 523(a)(19).

Upon motion by the Plaintiffs, the court reopened their bankruptcy case on February 5, 2019. On April 4, 2019, the Plaintiffs initiated this adversary proceeding against the Defendants, requesting the court to determine that no debts owed to the Defendants are nondischargeable under § 523(a)(19) and to sanction the Defendants for willfully violating the discharge injunction by filing the Missouri Action and the State Court Action. On September 25, 2020, the court entered an Order Regarding Cross-Motions for Summary Judgment, holding that the Plaintiffs owed no nondischargeable debts to the Defendants, and that the Defendants willfully violated the discharge injunction imposed by § 524 when they filed the Missouri Action and the State Court Action (collectively, "Civil Actions"). In a subsequent Order Awarding Sanctions for Violation

of the Discharge Injunction ("Sanctions Order") and accompanying Judgment entered on August

5, 2021, the court sanctioned the Defendants with civil contempt damages of $121,867.67 for

their violation of the discharge injunction. The Defendants appealed these rulings to the North

Carolina District Court.

On July 14, 2022, the North Carolina District Court entered an Order and accompanying

Judgment, affirming the court's determination that the Defendants violated the discharge

injunction but vacating the Sanctions Order and remanding the proceeding for the court to

reconsider the contempt finding and award of sanctions using the legal standard established

recently by the United States Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). In

*Taggart*, the Supreme Court held that the proper standard for considering civil contempt is

objective, and "[a] court may hold a creditor in civil contempt for violating a discharge order

where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful

under the discharge order." *Id.* at 1804.

On remand, the Defendants moved for summary judgment on the issue of contempt and

sanctions, asserting that based upon the undisputed facts in the case, the Defendants initiated the

Civil Actions with a fair ground of doubt that their alleged debts were excepted from the

Plaintiffs' discharge. The Plaintiffs disagreed and proffered that, even if there were a fair ground

of doubt, the Defendants acted in bad faith, noting that in *Taggart*, the Supreme Court

recognized that subjective intent is not always irrelevant, and "civil contempt sanctions may be

warranted when a party acts in bad faith." *Id.* at 1802 (citing *Chambers v. NASCO, Inc.*, 501 U.S.

32, 50 (1991)). On March 6, 2023, the court entered an Order Denying Motion for Summary

Judgment, ruling that using the objective standard set forth in *Taggart*, the court cannot hold the

Defendants in contempt for their violation of the discharge injunction but that the issue of

whether the Defendants acted in bad faith in initiating the Civil Actions should be determined at trial.

Discussion

When considering the Defendants' motion for summary judgment, the court gave the Plaintiffs the benefit of the doubt with respect to their argument that subjective bad faith could support civil contempt sanctions even when there exists a fair ground of doubt that a creditor's debt was excepted from discharge. After further consideration and review of applicable law, the court now believes that the Supreme Court's dicta in *Taggart* about bad faith means that it may be considered for purposes of sanctions only after an objective determination of civil contempt. *See Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 178 (B.A.P. 9th Cir. 2021), *aff'd*, No. 21-60020, 2021 WL 5542226 (9th Cir. Nov. 26, 2021) (interpreting *Taggart* to find that while subjective good or bad faith is not controlling, bad faith may be sufficient to impose contempt sanctions); *In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020) (finding that "*Taggart* clarifies that the standard to find civil contempt is objective, but subjective good or bad faith may affect the size of the range of losses attributable to noncompliance with the [discharge] injunction.").

Even if the court could hold the Defendants in contempt and impose sanctions under a subjective standard, the Plaintiffs did not meet their burden at trial of showing that the Defendants initiated the Civil Actions in bad faith. The Plaintiffs assert predominantly that the Defendants misrepresented that they purchased their shares in JFOV from the Plaintiffs. The Plaintiffs contend that the Defendants purchased their shares from the Heyls and only sought relief from the Plaintiffs after failed actions for recovery from the Heyls. In support of this contention, the Plaintiffs introduced into evidence several documents, each titled Agreement for

Assignment of Ownership Share JFOV, LLC. Each of these agreements reflects the transfer of a charter ownership interest in JFOV from one of the Heyls as "Assigning Member," with the consent of Richard Heyl and/or John Palczuk as "Managing Members," to one of the Defendants. The testimonial evidence established that the Plaintiffs and the Heyls were all members of JFOV, with Richard Heyl and John Palczuk being the managing members. The distinction of "Assigning Member" suggests that one of the members was transferring shares on behalf of JFOV, and the Plaintiffs presented no evidence that convinces the court that the Defendants purchased their shares from the Heyls in an individual capacity separate from their joint relationship with the Plaintiffs in JFOV.

The Plaintiffs next argue that the Defendants initiated the State Court Action in bad faith, because they knew they would be barred from obtaining a judgment because of applicable statutes of limitation and repose. The court is not persuaded that the timing of the State Court Action is indicative of bad faith. A statute of limitations does not generally bar an action from being filed but merely provides an affirmative defense supporting dismissal of the action. This court declines to assume how the state court would rule on a statute of limitations defense if raised but notes that the Defendants initiated the State Court Action shortly after the Plaintiffs pleaded guilty to selling unregistered securities. Even if the guilty pleas were not the trigger of the applicable statute of limitations, North Carolina courts recognize that "equitable doctrines may toll statutes of limitation." *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 240, 515 S.E.2d 445, 449 (1999).

A statute of repose imposes a strict time bar that is not measured from the accrual of a cause of action, and the Plaintiffs are correct that a statute of repose does not need to be raised as an affirmative defense. *KB Aircraft Acquisition, LLC v. Berry*, 249 N.C. App. 74, 84, 790 S.E.2d

559, 566 (2016) (citations omitted). The Plaintiffs failed, however, to present any specific statue of repose that would have barred absolutely the State Court Action and rendered the Defendants' initiation of the State Court Action to be in bad faith.

Although the court cannot find that the Defendants initiated the Civil Actions with bad faith sufficient to warrant contempt and sanctions, the court does believe their actions are perhaps overly aggressive and motivated by a long-held animosity toward the Plaintiffs. At the same time, the court understands these feelings and found the Plaintiffs' testimony less than credible. In addition, the Defendants presented shocking evidence that the Plaintiffs' Plan was confirmed based upon ballots accepting treatment for the class of unsecured creditors submitted by parties that had neither been scheduled as unsecured creditors nor filed timely proofs of allowed unsecured claims. The court is troubled by this revelation and strongly considered the Defendants' suggestion that it should set aside confirmation of the Plan and revoke the Plaintiffs' discharge; however, the court concludes that taking this drastic action over a decade after confirmation and distribution to other creditors in the case would be counterproductive to justice.

## Conclusion

At this stage, all parties are winners and losers, and the court urges them to go their separate ways. The Plaintiffs will not recover sanctions but will keep their discharge, which currently prevents any further action against them by the Defendants. The Defendants are absolved from contempt and sanctions liability, but the court cautions that their continued pursuit of recovery from the Plaintiffs, specifically their intended appeal of the determination of dischargeability to the United States Court of Appeals for the Fourth Circuit, is unreasonable and probably futile. In accordance with Rule 58(a) of the Federal Rules of Civil Procedure,

7

incorporated by Rule 7058 of the Federal Rules of Bankruptcy Procedure, the court entered

Judgment in favor of the Defendants on June 29, 2023.

END OF DOCUMENT